IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


KATHERINE L. PINHO,                         No. 1:13-cv-01475-HZ

               Plaintiff,           OPINION & ORDER

     v.

CAROLYN COLVIN, Acting Commissioner,
Social Security Administration,

              Defendant.


Alan Stuart Graf, P.C.
Alan Graf, Attorney At Law
208 Pine Street
Floyd, VA 24091

      Attorney for Plaintiff

S. Amanda Marshall
U.S. Attorney's Office
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

Erin F. Highland
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900, M/S 901
Seattle, WA 98104

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Katherine Pinho ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

## BACKGROUND

    Born in January, 1959, plaintiff was 51 years old on her filing date of April 28, 2010. Tr. 145. She speaks English and completed the 11th grade. Tr. 31, 49. She has no past relevant work experience. Id. Plaintiff alleges disability as of January 1, 1993 due to asthma, enlarged heart, hepatitis C, bipolar disorder, depression, and learning disabilities. Tr. 145-50, 177.

    The Commissioner denied plaintiff's application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 10. After an administrative hearing, held on December 6, 2011, ALJ Michael Kopicki issued a decision denying plaintiff's claim. Tr. 10-20, 25, 83-86, 94-98. The Appeals Council denied plaintiff's subsequent request for review on June 21, 2013, making the ALJ's decision the final Agency decision. Tr. 1-6; 20 C.F.R. § 422.210 (2014). This appeal followed.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. § 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. § 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. § 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; 20 C.F.R. § 416.920(e) & (f). If the Commissioner meets his burden and proves that the

claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. § 416.966.

## THE ALJ'S DECISION

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity since the application date of April 28, 2010. Tr. 11-12. At step two, the ALJ found plaintiff had the following severe impairments: asthma, reactive for hepatitis C antibody, sleep apnea, obesity, major depression, anxiety, post-traumatic stress disorder ("PTSD"), and a history of polysubstance abuse. Tr. 12-13. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal a listed impairment. Tr. 13-14.

The ALJ next assessed plaintiff's RFC and determined that plaintiff retained the ability to perform light work with the following limitations: she can lift and/or carry 20 pounds occasionally and 10 pounds frequently; she can stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday, and sit with normal breaks for a total of about six hours in an eight-hour workday; she should avoid exposure to fumes, odors, dusts, gases, poor ventilation, and concentrated exposure to hazards such as dangerous machinery and unprotected heights; she would have difficulty with complex and detailed tasks due to tension and difficulty processing abstractions; and she is limited to the performance of simple, repetitive tasks. Tr. 14. At step four, the ALJ found that plaintiff has no past relevant work. Tr. 19. At step five, the ALJ concluded that plaintiff would perform jobs that exist in significant numbers in the national economy, including production bench assembler, cafeteria attendant, and small products assembler. Tr. 20. Accordingly, the ALJ found that plaintiff was not disabled. Id.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. Id.; see also Batson, 359 F.3d at 1193. However, this Court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. Bray, 554 F.3d at 1225-26 (citing SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing same).

DISCUSSION

Plaintiff argues that the ALJ erred by (1) improperly evaluating the medical record; and (2) failing to fully develop the record. For the reasons discussed below, the ALJ's decision is affirmed.

I.      The ALJ's Evaluation of the Medical Evidence

Plaintiff first argues that the ALJ failed to properly evaluate the medical evidence. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among

physicians' opinions. Carmickle v. Comm'r, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. Lester, 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. Lester, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008).

1. Examining Psychologist Charles Reagan, M.D.

Plaintiff argues that the ALJ improperly rejected the opinion of examining psychologist Charles Reagan, M.D. Pl.'s Br. 12.[1] Dr. Reagan opined that plaintiff had issues with cognition, difficulty concentrating, and memory problems. Tr. 301-02. He diagnosed PTSD, generalized anxiety disorder, panic disorder with agoraphobia, and major depression. Tr. 301. Dr. Reagan stated that plaintiff had difficulty understanding questions posed in a face-to-face interview. Tr. 173-74. Dr. Reagan rated plaintiff's GAF score in the 45 to 50 range. Tr. 302.

The ALJ gave limited weight to Dr. Reagan's opinion. Tr. 18. Dr. Reagan's opinion was contradicted by the State agency physician Neal Berner, M.D., who disagreed with Dr. Reagan's findings regarding plaintiff's mental impairments. Tr. 63-65. Specifically, Dr. Berner opined in September, 2010 that plaintiff is capable of sustaining full-time work consisting of simple, repetitive tasks, and was thus less limited than indicated by Dr. Reagan's findings. See Tr. 64-66. The ALJ was thus required to provide specific, legitimate reasons for rejecting Dr. Reagan's controverted opinion. Lester, 81 F.3d at 830.

The ALJ provided legally sufficient reasons for rejecting Dr. Reagan's opinion. First, the ALJ noted that Dr. Reagan's opinion was based in part on plaintiff's subjective symptom testimony, which he found to be not credible.[2] Tr. 18. The ALJ "may reject a treating physician's opinion if it is based to a large extent on a claimant's self-reports that have been properly discounted as incredible." Tommasetti, 533 F.3d at 1041. Here, Dr. Reagan's notes simply recite many of plaintiff's own self-reports. See Tr. 298-302. The ALJ's credibility finding, and the fact

---

[1] Plaintiff also contends that the ALJ failed to provide a complete medical record to Dr. Reagan. The Regulations require, however, only that the ALJ provide a medical source with "any necessary background information about your condition." 20 C.F.R. § 416.917. The Court is satisfied that the ALJ did not err by failing to provide a complete medical record to Dr. Reagan.

[2] Plaintiff does not contest this finding.

that Dr. Reagan relied upon plaintiff's subjective statements in formulating his opinion, provide a specific, legitimate reason for rejecting Dr. Reagan's opinion. Tommasetti, 533 F.3d at 1041.

Second, the ALJ noted that Dr. Reagan's opinion was inconsistent with other evidence in the record. Tr. 16. A physician's opinion regarding a claimant's level of impairment may be rejected because it is unreasonable in light of other evidence in the record. Morgan v. Comm'r, 169 F.3d 595, 601 (9th Cir. 1999). Here, the ALJ noted that plaintiff elsewhere denied symptoms of PTSD. He also noted that plaintiff was not compliant with her medication during the period when she was evaluated by Dr. Reagan, which likely exacerbated plaintiff's symptoms. Tr. 16, 283, 310, 323, 346. The ALJ also noted Dr. Reagan's opinion conflicted with the opinions of the agency medical consultants. For example, Joshua Boyd, Psy.D., opined in December, 2010, that plaintiff is "capable of working a normal 40 hour workweek" and can "carry out simple but not complex tasks." Tr. 78. In light of this evidence, Dr. Reagan's opinion that plaintiff was severely limited is not reasonable, and the ALJ was entitled to reject it based on the weight of the other evidence in record. Morgan, 169 F.3d at 601. The ALJ's determination was thus supported by legally sufficient reasons.

   2.  Global Assessment of Functioning ("GAF") Scores

Plaintiff also argues that the ALJ failed to provide legally sufficient reasons for failing to discuss her low GAF scores. "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." Garrison v. Colvin, 2014 WL 3397218 at n.4 (9th Cir. 2014). While GAF scores "are not controlling and do not directly correlate to a finding of disability, they are relevant." Skelton v. Comm'r, No. 06:13-cv-01117-HZ at *19-20 (D. Or. Aug. 2014). Failure to discuss a claimant's GAF scores can be harmful error when the scores are consistent and rendered over a significant period of

time by multiple practitioners. Id. at *20-21 (citing Stout v. Comm'r, 454 F.3d 1050, 1055, (9th Cir. 2006)).

As noted, Dr. Reagan rated plaintiff's GAF score in the 45 to 50 range. As discussed above, the ALJ provided legally sufficient reasons for rejecting Dr. Reagan's opinion in light of conflicting medical evidence and Dr. Reagan's reliance upon plaintiff's discredited subjective symptom testimony. See Tommasetti, 533 F.3d at 1041. Although the ALJ did not specifically mention Dr. Reagan's GAF rating, the Court finds that the ALJ nevertheless considered Dr. Reagan's opinion thoroughly and provided sufficient reason for rejecting it.[3] Here, the ALJ concluded that the record does not support serious symptoms or serious impairment in social, occupational, or school functioning, as indicated by a GAF rating of 45-50. Tr. 18; see also Carmickle, 533 F.3d at 1164; see also DSM-IV TR, p. 34. Because the ALJ provided legally sufficient reasons for rejecting Dr. Reagan's opinion, he properly rejected Dr. Reagan's assessment of plaintiff's GAF score. Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d at 601.

Mental health treatment providers Linda MacGregor, MA, MFT, Keir Todd, PA-C, M.Ed., and Natalie Warner, MS, QMHP, also assessed plaintiff's GAF score at the 45 to 55 range, indicating moderate to serious impairment in mental functioning. See Tr. 274, 281, 290, 295, 307, 310, 318, 327. Ms. MacGregor, Mr. Todd, and Ms. Warner were "other" medical sources under the regulations, and the ALJ was required to provide germane reasons for rejecting their opinions. See 20 C.F.R. § 416.913(d)(1). If the ALJ offers "arguably germane reasons" for

---

[3] The Court also notes that Dr. Reagan found that, on examination, plaintiff was clean and well-groomed, had normal speech and linear thought, spelled correctly, and had adequate knowledge and fair insight into her own condition. Tr. 300-01. Dr. Reagan also found that plaintiff has "no difficulty understanding or remembering instructions." Tr. 300-01. While Dr. Reagan also stated that plaintiff could not perform more sophisticated operations than subtraction of 7 from 100, he did not explain this brief, conclusory opinion. Tr. 300; see Tonapetyan, 242 F.3d at 1149.

dismissing "other," or lay, evidence, he need not "clearly link his determination to those reasons." Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir.2001).

As discussed above, the ALJ stated legally sufficient reasons to reject the symptoms and limitations indicated by GAF scores in the 45-50 range. Those reasons apply with equal weight to the opinions of Ms. MacGregor, Mr. Todd, and Ms. Warner, even though the ALJ did not "clearly link his determination to those reasons." Lewis, 236 F.3d at 512. Further, the ALJ noted the plaintiff had a limited treatment history with Ms. Warner, Tr. 18-19, 330, who declined to complete a mental RFC for plaintiff because she did not feel that she had met with plaintiff frequently enough. Tr. 333. This was an additional germane reason for rejecting Ms. Warner's opinion regarding plaintiff's GAF scores. On this record, the ALJ provided germane reasons for rejecting the opinions of plaintiff's mental health providers regarding her GAF scores.

III.     Failure to Develop the Record

Plaintiff next argues that the ALJ erred because he failed to develop the record by ordering psychological testing. Critical to the disability determination process "is the gathering and presentation of medical evidence. The burden of demonstrating a disability lies with the claimant." Reed v. Massanari, 270 F.3d 838, 841 (9th Cir. 2001), citing Bowen, 482 U.S. at 146 n.5. Nevertheless, "the ALJ has a duty to assist in developing the record." Id. at 841, quoting Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 589 (9th Cir. 1998); 20 C.F.R. § 416.912(d)(f). "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459–460 (9th Cir. 2001), citing Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). "One of the means available to an ALJ to supplement an inadequate medical record is to order a consultative examination, i.e., 'a physical

or mental examination or test purchased for [a claimant] at [the Administration's] request and expense.'" Reed, 270 F.3d at 841, quoting 20 C.F.R. § 416.919.

Plaintiff argues that recent evidence in the medical record indicates that she suffers from undefined and undiagnosed cognitive problems, and the ALJ was therefore required to order an IQ test. Pl.'s Br. 10. The Court disagrees. There is no indication that the record concerning plaintiff's intellectual functioning was ambiguous or inadequate such as to trigger the ALJ's duty to develop the record. Although Dr. Reagan's mental status exam revealed "some issues" with cognition, concentration, memory, and abstract thinking, he did not perform or recommend additional intelligence testing. Tr. 301-02. Further, other medical providers who examined plaintiff found that she had normal intellectual functioning and intact orientation, cognition, and thought processes. Tr. 274, 308, 325, 327. The record evidence regarding plaintiff's intellectual functioning thus did not trigger a duty to further develop the record. See Mayes, 276 F.3d at 459–460.

The recent Ninth Circuit holding in Garcia v. Comm'r, 2014 WL 4694798 (9th Cir. Sept. 23, 2014), cited in plaintiff's Notice of Supplemental Authority, is not on point. The claimant in that case received disability benefits as a minor because of an intellectual disability, and the case before the Court turned on whether her disability persisted after she reached the age of majority. The claimant's IQ scores thus played a particularly important role in assessing the existence of a disability in Garcia. Id. By contrast, for reasons discussed above, plaintiff's intellectual functioning is not a central issue in this case. The ALJ's decision is affirmed.

/ / /

/ / /

11 - OPINION & ORDER

CONCLUSION

Based on the foregoing, the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Dated this ___6___ day of ___OCT_____, 2014

_____
MARCO A. HERNÁNDEZ
United States District Judge